Battle, J.
 

 If the testator had, by the fourth clause of his will, directed, simply, that the slaves therein mentioned should, at the death, &c., of his wife, be “freed” by his executors, then, it would have been their duty to see that the wish of their testator should be carried into effect at the expense of his estate, in one or other of the modes prescribed in the 46th arid 47th sections of the 107th chapter of the Rev. Code. See
 
 Hogg
 
 v. Capehart, decided at June Term, 1857, which is reported as a note to this case, (vide Rote.
 
 *
 
 ) Such
 
 *72
 
 a provision for emancipation, would not be contrary to the policy of our law; because, under it, the slaves would be .removed from the State. In the present case, there are expressions in the clause of the will under consideration, which exclude the idea of a lawful emancipation, because it indicates, the intention of the testator, that the slaves should remain in the State. The executors are required to “free” the slaves, but they are to be under the especial care of one of them, to wit, the testator’s son Abner. The testator then gives to Lindsey, one of his slaves, who is the husband of another, and the father of the remainder of those to whom he designed the boon of freedom, one half of his blacksmith tools, and his rifle gun and shot bag. These provisions, slight as they may be, show that the testator had no idea that Lindsey was to be carried out of the State, to a distant country; and if he were not to be sent away, it is very certain that the testator did not intend to have his wife and children separated from him; see
 
 Greene
 
 v. Lane, Busb. Eq. 102.
 

 
 *73
 

 We
 
 are satisfied, then, that the trust for the emancipation of.these slaves is not such an one as can be carried into effect under the provisions of those sections of the chapter of the Revised Code, to which we have referred; but, as the slaves, Lindsey and his wife Lucy, are above the age of fifty years, they may be emancipated by virtue of the 49th section of the same chapter, if the executor can prove meritorious services, and will,lotherwise, comply with the requirements of that section.
 

 As most of the slaves in controversy, cannot be emancipated in any way, a question arises, whether they fall into the residuum of the testator’s estate, and pass under the 16th and 17th clauses of his will, to the legatees therein named. They certainly are not mentioned in the 16th clause, because the residue therein embraced, is expressly directed to be divided among certain legatees, of whom the testator’s wife is one, whereas, the slaves had been, by a previous clause, given expressly to the wife for life, or widowhood, or, at all events,
 
 *74
 
 during her residence in the county of Iredell. It is clear, too, as we think, that the residue given by the 17th clause, is also a special one, and cannot have the effect to dispose of these slaves. The clause directs that all the property left to the use of the testator’s wife, that is not ‘‘otherwise directed,” be sold by the executors at the wife’s death, marriage or removal out.of the county, on a credit of twelve months, and the proceeds divided, &c. How, it is quite certain, that the testator did not intend that the slaves, whom he wished to set free, (and two of whom may yet be set free,) should be sold at the very moment when their freedom was to accrue. There were many other articles of property upon which the clause could operate as to which no other direction was given, leaving the slaves unaffected, because, as to them, there was another direction given. See
 
 Lea
 
 v. Brown, 3 Jones’ Eq. 141, in which most of the cases on the subject are referred to, and the principles upon which they were decided, discussed and explained. It follows that as the slaves in controversy, have not been effectually disposed of by the will, they belong to the next of kin of the testator, and must be divided among them according to the statute of distributions.
 

 The division of the proceeds of the property other than the slaves directed to be sold by the executors under the 16th and 17th clauses, must
 
 he per capita
 
 and not
 
 per sUrpes,
 
 as there is nothing in the will to take it out of the general rule. See
 
 Roper
 
 v.
 
 Roper,
 
 decided at the present term, (ante 16) where the authorities upon the subject, are referred to and discussed.
 

 Per Cubiam, Decree accordingly.
 

 *
 

 THOMAS D. HOGG,
 
 Ex'r against
 
 GEORGE W. CAPEHART.
 

 Where a testator directs, in Ms will, that his slaves shall be freed, it is the duty of the executor to see that the wish of the testator is carried into effect at the expense of his estate.
 

 The hires of slaves, ordered to be emancipated, must be first applied to the expenses of their removal, and if they prove insufficient, the remainder must be paid out of the estate.
 

 
 *72
 
 Slaves ordered by will to be emancipated, can elect to accept or reject the boon of freedom; and where children are concerned, their parents must elect for them until they are of age, and then they have an election themselves.
 

 This cause came up by consent, from the Court of Equity of Bertie.
 

 The points are sufficiently presented in the opinion of the Court.
 

 Badger
 
 and
 
 Winston, Jr.,
 
 for the plaintiff.
 

 , for the defendant.
 

 Nash. C. J. The bill is filed by the executor of James L. Bryan, to obtain instructions as to how he shall carry into execution his will. James L. Bryan died in October, 1856, and in his will is this clause: “I give to my slaves their freedom.” The bill asks instructions on several points. The first is, is it the duty of the executor to free the said slaves ?
 

 We are of opinion that it is; and that having undertaken to execute the will, he is bound to execute all the trusts which are not forbidden by the laws of the State. Here is a clear bequest to the slaves of their liberty. A be-, quest which is lawful; see
 
 Thompson
 
 v.
 
 Newlin,
 
 6 Ired. Eq.
 
 384; Thomas
 
 v.
 
 Palmer,
 
 1 Jones’ Eq. 249;
 
 Thompson
 
 v.
 
 Newlin,
 
 8 Ired. Eq. 32.
 

 2nd. The next question is: if he is bound to emancipate the slaves where must he carry them to ? and with what funds ? In the case of
 
 Thompson
 
 v.
 
 *73
 
 Newlin, 8th Ired. Eq. 32, it was decided by a majority of the Court that, under a devise for emancipation, the executor could emancipate by sending them to a free State, where they would be free, and was not obliged to emancipate them under the act then in force. The opinion was not unanimous, for when the case was before the Court, previously, (6 Ired.) a dissenting opinion was filed. A doubt, therefore, rested upon the question. By the act of 1856, Revised Code, ch. 107, this doubt is removed. By the 47th section, in which it is enacted: '
 
 “
 
 Whenever it shall be directed by a testator, that any of his slaves shall be emancipated and carried to any State, Territory, or country, and it may not be convenient to carry them to the place' specially appointed, the Court shall designate and prescribe to what other place the slaves shall be carried after, or for, emancipation.” By this section, the executor is au-thorised to send the slaves before emancipation here, to the State or country appointed by the testator, or in the absence of such designation by him, to such State, or country, as the proper court shall direct. Under this act, there is no difference of opinion as to the construction. It is the policy of. the State, that when slaves are emancipated, they shall be sent to the place from whence a return to this State is the least likely. In pursuance of this policy, we •appoint Liberia as the country to which the executor shall send the slaves.
 

 The third question is, as to their.hires. The hires of the slaves will constitute a fond for paying the expenses of their removal, and if it shall prove insufficient, the deficiency must be furnished out of the fond contained in the residuary clause.
 

 
 *74
 
 To the fourth question, we answer, that liberty cannot be forced upon any of the slaves, who are of age to choose for themselves. If any of them refuse to accept their freedom, the bequest of liberty, as to them, fails, and they remain slaves, and sink into the residuum.
 

 A commissioner must be appointed to ascertain from the adult slaves, wÉo are willing to go to Liberia, and who are not; and, if there are children under the age of fourteen, their parents must elect for them. If there are any who have no parents, or whose parents elect for them not to go, they must have liberty, on coming of age, to make their election.
 
 Cox
 
 v.
 
 Williams,
 
 4 Ired. Eq. 15.
 

 Per Curiam, Decree accordingly.